IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Zebulon Enterprises, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 19 C 5165 |
| | ) | |
| DuPage County, Illinois, an | ) | |
| Illinois Governmental Entity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

In this action, plaintiff Zebulon Enterprises, Inc.
("Zebulon"), an adult bookstore, sues DuPage County, Illinois,
("DuPage") to challenge DuPage's recently-enacted adult
entertainment ordinance, Ordinance AHAB-O-0031-19 ("the
Ordinance"), as impermissibly burdening Zebulon's rights under
the First, Fourth, Fifth, and Fourteenth Amendments and
analogous portions of the Illinois Constitution. After this suit
was filed, the DuPage County Board adopted amendments to the
Ordinance in Ordinance AHAB-O-0031A-19 ("the Amended
Ordinance").[1] Due in part to the passage of the Amended
Ordinance, the parties entered a stipulation to streamline

---

[1] For purposes of the pending motions, I take judicial notice of
the Amended Ordinance. *Demos v. City of Indianapolis*, 302 F.3d
698, 706 (7th Cir. 2002) ("[A] district court can always rely on
public statutes.") (citing Fed. R. Evid. 201; *Newcomb v.
Brennan*, 558 F.2d 825, 829 (7th Cir. 1977)).

multiple pending dispositive motions. Dkt. Nos. 41, 42. Three
such motions remain. In two motions, DuPage challenges Zebulon's
pleadings under various provisions of Rule 12 of the Federal
Rules of Civil Procedure. Dkt. Nos. 17, 38. Zebulon also seeks
partial summary judgment on its second claim and part of its
ninth claim, which challenge the Ordinance's site inspection
provision. Dkt. No. 22. For the reasons that follow, DuPage's
motions are granted in part and denied in part and Zebulon's
motion is denied.

I.

I first address DuPage's motions. In its first motion[2]
DuPage seeks to dismiss Zebulon's entire first, third, and fifth
claims and parts of its eighth and ninth claims pursuant to Rule
12(b)(6) for a failure to state a claim and lack of standing.
DuPage also seeks judgment on the pleadings under Rule 12(c) for
Zebulon's second and fourth claims, or in the alternative, to
dismiss those claims pursuant to Rule 12(b)(6). And DuPage seeks
to strike certain pleadings under Rule 12(f). DuPage's second

---

[2] Before briefing completed on DuPage's first Rule 12 motion,
Zebulon filed its Second Amended Complaint, Dkt. No. 32. Neither
party has contended that the Second Amended Complaint resolves
any of the issues raised in DuPage's motion. Consequently, while
that motion is aimed at Zebulon's First Amended Complaint, Dkt.
No. 14, it "shall stand as to any alleged defects in the [First
Amended Complaint] that have survived the amendment." *Cabrera v.
World's Finest Chocolate, Inc.*, No. 04 C 0413, 2004 WL 1535850,
at *1 (N.D. Ill. July 7, 2004) (Aspen, J.) (citing 6 Charles
Alan Wright, et al., Federal Practice & Procedure, § 1476 (2d
ed. 1990)).

motion, as thinned by the parties' stipulation, seeks dismissal of Zebulon's second claim and part of its ninth claim.

Next, I must address procedural issues raised by DuPage's motions. As the operative complaint has not been answered, it is not appropriate to grant judgment on the pleadings. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). Accordingly, I will address DuPage's challenge to Zebulon's second and fourth claims as a motion to dismiss those claims pursuant to Rule 12(b)(6). In either event, a Rule 12(c) motion for judgment on the pleadings is governed by the same standard that is used for a Rule 12(b)(6) motion. *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) (citation omitted).

DuPage's arguments that certain claims lack standing "would have been more appropriately brought as a 12(b)(1) motion, based on lack of subject matter jurisdiction" rather than a Rule 12(b)(6) motion. *Thomas ex rel. Smith v. Cook Cty. Sheriff*, 401 F. Supp. 2d 867, 870 n. 2 (N.D. Ill. 2005) (citations omitted). As such, I will consider DuPage's challenges to Zebulon's standing under Rule 12(b)(1).

A.

To survive a motion to dismiss under Rule 12(b)(6), Zebulon must allege "a short and plain statement of [each] claim showing

3

that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, it must state a claim "that is plausible on its face" after I disregard conclusory allegations. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a motion to dismiss under Rule 12(b)(6), I accept Zebulon's well-pled factual allegations as true and draw all reasonable inferences in its favor. *Id*. Likewise, facial challenges to standing under Rule 12(b)(1) are assessed using the same "*Twombly–Iqbal* facial plausibility requirement for pleading a claim[.]" *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

B.

The following allegations are common to all of Zebulon's claims. Since 1983, Zebulon's business has operated at 24W777 Lake Street in unincorporated DuPage County. That business consists of a retail section and two video arcade rooms. The retail section sells sexually oriented products. The video arcade sections contain booths in which individuals can lock the doors and "view sexually oriented motion pictures by way of a currency-activated mechanism." Dkt. No. 32 at ¶ 43. Zebulon typically operates with a single clerk at a counter adjacent to the front entrance of the store, where retail sales occur.

4

Cleaning and maintenance employees are also intermittently present.

Zebulon is presently the last remaining adult business in DuPage's jurisdiction. Zebulon has a history of hostile relations with DuPage and local law enforcement, namely, a 1984 lawsuit in which Zebulon successfully challenged a DuPage zoning ordinance,[3] and a series of early-1990's obscenity cases.[4] More recently but before the Ordinance was passed, the DuPage County Board of Commissioners established an ad hoc committee. Dan Cronin, the Chairman of that board, articulated that committee's mission:

> I also propose the creation of an Ad Hoc Committee on Adult Businesses. The purpose of this committee – the Adult Businesses Committee – is to examine the issues – the difficult issues and troubling issues – related to adult businesses in the unincorporated areas of DuPage County, then utilize that information and testimony offered to the committee to propose reasonable licensing regulations designed to mitigate the negative secondary impacts these businesses have on the community. *We'll do the best we can to get these businesses out of our community.*

Dkt. No. 32 at ¶ 21 (emphasis added in the complaint).

The ad hoc committee held hearings and collected "what appears to be all of the available information justifying secondary-effects regulations of adult businesses." *Id.* at ¶ 22.

---

[3] *Zebulon Enterprises, Inc. v. County of DuPage*, 496 N.E.2d 1256 (Ill. App. Ct. 1986).

[4] *People v. Zebulon Enterprises, Inc.*, 684 N.E.2d 1123 (Ill. App. Ct. 1992), *aff'd*, 649 N.E.2d 424 (Ill. 1995), *cert. denied*, 516 U.S. 864 (1995).

Citizens and social service professionals present as witnesses expressed hostility to Zebulon's wares and the existence of any adult business in the community. Other hearing witnesses indicated that private real estate developers have targeted Zebulon's neighborhood, "a meaningful tax base," for gentrification, which, Zebulon believes, provides a further motive for DuPage's animus against it. *Id*. at ¶ 24. For example, the Mayor of the nearby Village of Roselle testified in favor of the Ordinance, "believing that [it] would destroy the profitability of Zebulon's business." *Id*. Nevertheless, "the hearings did not produce any concrete evidence that Zebulon's operation over the course of the past decades in DuPage County had caused any particular problems." *Id*. at ¶ 25.

The Ordinance, which is attached to the Second Amended Complaint, imposes new licensing and operational requirements on Zebulon, "its only extant target." *Id*. at ¶ 26. It requires annual licensing of Zebulon's business and of each of its employees. It also contains requirements for the physical layout, signage, and lighting of Zebulon's business. Zebulon contends that compliance with these requirements would result in a loss of revenue by reducing the number of viewing booths in its arcades by 73% and an increase in costs in having to construct and staff a manager station in each of its arcades.

C.

1. First Claim

Zebulon's first claim alleges that the Ordinance, as applied and threatened to be applied, would abridge its free speech rights under the First and Fourteenth Amendments and is designed and intended to "restrict free expression by eradicating all adult businesses from the jurisdiction[.]" *Id.* at ¶¶ 54-55. DuPage argues that this claim lacks requisite factual allegations and is comprised only of legal conclusions, generic information about the parties, and irrelevant, inaccurate allegations about DuPage's pretextual motives.

The First Amendment protects non-obscene, sexually explicit speech, such as that allegedly offered in Zebulon's adult video arcade. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (collecting cases). Regulations on sexually explicit speech are typically evaluated under one of two frameworks. Zoning ordinances are considered "time, place, and manner restrictions" and are consequently evaluated under the framework set out in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), and *City of Los Angeles v. Alameda Books*, Inc., 535 U.S. 425 (2002). *Andy's Restaurant & Lounge, Inc. v. City of Gary*, 466 F.3d 550, 552-53 (7th Cir. 2006). Statutes that impact expressive conduct, like

7

prohibitions on public indecency, are evaluated under the framework set out in *United States v. O'Brien,* 391 U.S. 367 (1968). *Id.* at 553.

Zebulon's challenge to the whole of the Ordinance does not fit neatly within either framework. It involves restrictions on where Zebulon can conduct its business—in a building that complies with certain interior configuration requirements—and prohibitions that may impact expressive conduct—*e.g.*, forbidding the possession of open alcohol containers. However, the central thrust of Zebulon's claim is that it is being regulated out of existence through the combination of the Ordinance's new building layout requirements and its inability to upgrade its present location or move. Because these concerns center on where Zebulon may engage in its sexually oriented business, the *Renton/Alameda Books* framework is more appropriate.

In reviewing regulations of adult entertainment establishments, *Renton* and *Alameda Books* instruct me to consider:

> (1) whether the regulation constitutes an invalid total ban or merely a time, place, and manner regulation, (2) whether the regulation is content-based or content-neutral, and accordingly, whether strict or intermediate scrutiny is to be applied, and (3) if content-neutral, [apply intermediate scrutiny to determine] whether the regulation is designed to serve a substantial government interest and allows for reasonable alternative channels of communication.

8

*R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 407 (7th Cir. 2004).

The first and second *Renton/Alameda Books* considerations establish that intermediate scrutiny applies for Zebulon's claim. The Ordinance, which is incorporated into Zebulon's pleadings by reference, states in its preamble that it was enacted "to combat and, or, alleviate the negative and harmful secondary effects associated with businesses engaged in on-premises, sexually-oriented adult entertainment." Dkt. No. 32-2 at 2. An ordinance is regarded as content neutral so long as "one purpose" of the ordinance is "to combat harmful secondary effects," even if it is not literally content neutral. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (quoting *City of Erie v. Pap's A.M.,* 529 U.S. 277, 292 (2000) (plurality opinion)); *see also Andy's Rest. & Lounge*, 466 F.3d at 553 ("[I]ntermediate scrutiny is applied if the challenged law is found to be either content neutral or for the purpose of decreasing secondary effects.") (citations omitted).

Zebulon argues that the Ordinance is a total ban on its speech because its allegations show that DuPage's actual concern in enacting the ordinance was hostility to Zebulon. I am "sensitive to the possibility that [the Ordinance] might be a pretextual use of the power to zone as a means of suppressing expression." *R.V.S.*, 361 F.3d at 410 (citing *Young v. American*

9

*Mini Theatres, Inc.*, 427 U.S. 50, 84 (1976) (Powell, J., concurring)). However, allegations about a municipality's "illicit motive" do not establish that a regulation is content based. *See Pap's A.M.*, 529 U.S. at 292 (plurality opinion). Ultimately, the questions of "whether the adverse secondary effects invoked by the municipality have a basis in reality and are likely to be reduced by the challenged regulation" are addressed in the intermediate scrutiny analysis. *BBL*, 809 F.3d at 326.

Under the intermediate scrutiny test provided in *Renton/Alameda Books*, regulations are constitutional if they are "designed to serve a substantial government interest, narrowly tailored and do[] not unreasonably limit alternate avenues of communication[]." *R.V.S.*, 361 F.3d at 410. Zebulon's complaint raises a reasonable inference that the Ordinance is not designed to advance DuPage's purported interest of combating harmful secondary effects or narrowly tailored to that end. Zebulon plausibly alleges that the Ordinance's stated purpose does not accurately recite its true purpose. The ad hoc commission hearings allegedly revealed plans to develop Zebulon's neighborhood and various witnesses' antipathy to Zebulon. These hearings allegedly did not yield any evidence on the negative secondary effects of Zebulon's business—the only adult entertainment business in DuPage's jurisdiction. *Cf. Foxxxy*

10

*Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 706, 715
(7th Cir. 2015) ("In the wake of *Alameda Books*, our court has
been consistent in requiring that a regulating body produce some
specific, tangible evidence establishing a link between the
regulated activity and harmful secondary effects."). 
Accordingly, Zebulon has stated a claim. *See R.V.S.*, 361 F.3d at
414 ("As we have determined that the Ordinance is not
appropriately designed to serve a substantial government
interest and is not narrowly tailored, it is unnecessary for us
to separately analyze whether the Ordinance leaves open
reasonable alternate channels of communication.")

DuPage's remaining arguments, challenging the allegations
about its motives in issuing the Ordinance, raise factual
disputes that cannot be resolved on a motion to dismiss. *Foxxxy
Ladyz Adult World,* 779 F.3d at 717 ("To dismiss plaintiffs'
claim now, when [the village] has not yet made any affirmative
showing of adverse secondary effects and plaintiffs have
therefore not received a full and fair opportunity to challenge
[the village's] findings, would be premature."). DuPage will
have its opportunity to present its side of the facts and
Zebulon its opportunity to challenge those facts.

### 2. Second Claim

Zebulon's second claim asserts that Section 20-267 of the
Ordinance permits unlimited warrantless searches of Zebulon's

11

business and its customers, in violation of the First and Fourth
Amendments. This claim challenges Section 20-267 on two
independent theories: 1) the Ordinance allows unconstitutional
searches of private areas of Zebulon's store and 2) the
Ordinance empowers DuPage officials to harass Zebulon's
customers through a continual police presence. DuPage's motions
to dismiss only address the former theory. And DuPage has
amended the Ordinance to allow inspections only in areas of
adult entertainment businesses "designated as open to the
public." Dkt. No. 43 at 6. In light of this amendment, Zebulon
concedes that its claim that Section 20-267 Ordinance allows
warrantless searches of private areas is now moot. *Id*.
Accordingly, DuPage's motions to dismiss are granted with
respect to that claim. *See Maryland v. Macon*, 472 U.S. 463, 468–
69 (1985) (bookstore had no reasonable expectation of privacy
where the public was invited for business). However, Zebulon's
claim that the Ordinance empowers DuPage officials to harass its
customers and employees may proceed as unchallenged and will be
addressed in Zebulon's motion for partial summary judgment.

### 3. Third Claim

Zebulon's third claim alleges that the Ordinance's
provisions for licensing adult business employees are calculated
to impede its ability to hire and retain staff, which imposes an
unconstitutional impediment on its First Amendment rights

12

without due process safeguards. Specifically, Sections 20-257 and 20-258 of the Ordinance impose "onerous and expensive applications and licensing fees," including a $300 annual fee for each employee. Dkt. No. 32 at ¶ 64. Also, Sections 20-254(B)(4) and 20-258(E) require that adult businesses and their employees undergo special human trafficking training provided by the DuPage County Sheriff to obtain a license. But the Ordinance provides no guarantee that such training will be available, which allows DuPage to delay license approval by withholding training.

DuPage argues that this count should be dismissed because 1) Zebulon's allegations about costly fees fail to state a constitutional claim and 2) its allegations concerning the availability of human trafficking training present a hypothetical injury that Zebulon lacks standing to assert.

DuPage's first argument is unconvincing. According to DuPage, Zebulon's challenge to the licensing fees is fatally flawed because it does not expressly allege that the Ordinance's fees are unrelated to the administration costs for licensure. True, DuPage may require a reasonable licensure fee "to defray the cost of administering permissible regulation of a particular form of speech" without running afoul of the Constitution. *S.-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 897 (7th Cir. 1991) (citing *Cox v. New Hampshire*, 312

13

U.S. 569, 576–77 (1941)). However, as DuPage admits, it bears
the burden for establishing that its fees fall within this safe
harbor. *Id.* at 898. Zebulon is not required to plead in
anticipation of such a defense. *See, e.g., Allen v. GreatBanc
Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (a plaintiff need not
plead the absence of exceptions to statutory prohibitions for
which a defendant bears the burden of proof).

   Nor am I convinced that Zebulon's complaint must provide
greater detail about what it considers onerous about the license
application process. "Complaints plead *claims*, which is to say
grievances." *ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at
Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) (emphasis in
original and internal citations omitted). Consequently,
complaints need not "set out a line of legal argument." *Id.*
Zebulon has alleged that the Ordinance's license application
process, as established in Sections 20-257 and 20-258, is
onerous and expensive so as to impede Zebulon's ability to staff
its adult business, which unduly burdens Zebulon's First
Amendment speech rights. That short, plain statement is
sufficient to state a claim. *See, e.g., Genusa v. City of
Peoria*, 619 F.2d 1203, 1220-21 (7th Cir. 1980) (affirming
determination that ordinance provision requiring that employees
obtain a permit to work in an adult bookstore was an
unconstitutional prior restraint on speech where the record did

14

not establish any legitimate interest for imposing such a requirement).

Turning next to the issue of standing, DuPage is mistaken that Zebulon's claim states a hypothetical injury. Generally, to establish standing under Article III of the Constitution, a litigant must "prove that [it] has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). A challenge to a licensing scheme on First Amendment grounds, however, "does not involve the conventional standing requirements." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1043 (7th Cir. 2002). "[I]t is well established that [a plaintiff] has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not [its] conduct could be proscribed by a properly drawn statute, and whether or not [it] applied for a license." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 756 (1988) (quoting *Freedman v. State of Md.*, 380 U.S. 51, 56 (1965)).

Zebulon alleges facts sufficient to confer standing. It alleges that the Ordinance does not require the DuPage County Sheriff to provide sex trafficking training within any definite

period of time and that such training is required for both it
and its employees to obtain the licenses respectively needed to
conduct business and work. It follows that the sheriff could
delay Zebulon's licensure by withholding training. *See FW/PBS*,
493 U.S. at 226 (ordinance allowed city to indefinitely postpone
issuing an adult business license because licensure required
inspections by city departments but the ordinance set no time
limit within which such inspections must occur). Allowing such
unrestrained discretion to a government official creates an
"immediate chilling effect" on speech that constitutes an injury
sufficient to provide standing. *Six Star Holdings, LLC v. City of
Milwaukee*, 821 F.3d 795, 802 (7th Cir. 2016). Zebulon may proceed
with its third claim.

### 4. Fourth Claim

Zebulon's fourth claim contends that the Ordinance violates
its free speech and due process rights by imposing strict
liability for violations of the Ordinance's various age and
alcohol restrictions which, in turn, can result in the
revocation or denial of Zebulon's business without any finding
of *scienter*. Specifically, it is a violation of the Ordinance to
employ any person under the age of 18 (a "minor"), § 20-
256(A)(1), to have any minor on the premises, § 20-263(D), to
employ or provide services to any minor, §20-265(A), to permit a
minor on the premises, §20-265(B), or to have any person possess

16

or consume alcohol on the premises, § 20-269. Licenses can be revoked or denied for any such violation, § 20-261(A)-(C).

DuPage seeks to dismiss Zebulon's challenges to Sections 20-265(B) and 20-269 of the Ordinance on the grounds that these provisions, respectively, make it unlawful for an adult business "to permit" a minor in an adult entertainment facility or "to permit" the consumption or possession of alcoholic beverages. DuPage contends that the phrase "to permit" provides a scienter element for violations of Sections 20-265(B) and 20-269. *See, e.g., City of Champaign v. Auler*, 442 N.E.2d 330, 332 (Ill. App. Ct. 4th Dist. 1982) (ordinance providing owners shall not "suffer or permit" a dog to run at large required the city to prove either intent or negligence in allowing a dog to so run); *Hansmar, Inc. v. Illinois Liquor Control Comm'n*, 397 N.E.2d 241, 244-45 (Ill. App. Ct. 2nd Dist. 1979) (the use of the terms "suffer or permit . . . . evidences the legislative intent to require proof of either authorization, knowledge, or at least a recklessness in failing to know.")

In opposition, Zebulon argues that statutory prohibitions that implicate the First Amendment should require some level of *scienter* be proved for each element of a given offense. *See, e.g., United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994). Zebulon also refers to the arguments it raised in its motion for summary judgment on its third and fourth claims,

17

which it has withdrawn by stipulation. *See* Dkt. Nos. 28 at 15,
41, and 42. Zebulon, however, offers no argument to refute
DuPage's contention that the term "to permit" requires a proof
of *scienter* for violations of Sections 20-265(B) and 20-269.
Accordingly, Zebulon has waived its opposition argument. *See,
e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016).
DuPage's motion to dismiss is granted with respect to Sections
20-265(B) and 20-269.

DuPage's motion is silent with respect to the other
provisions challenged in Zebulon's fourth claim: Sections 20-
256(A)(1), 20-263(D), and 20-265(A). Accordingly, my ruling here
does not prevent Zebulon's challenges to those provisions from
proceeding.

### 5. Fifth Claim

Zebulon's fifth claim asserts that Section 20-264 of the
Ordinance requires numerous costly changes to its physical
plant, which are designed to burden its free speech by providing
a mechanism for DuPage to force the closure of Zebulon's
business. Zebulon further alleges that it "cannot make a
rational determination to expend capital in an effort to comply"
with these requirements in light of the possibility that it can
be "shuttered on trivial or manufactured grounds." Dkt. No. 32
at ¶ 73.

DuPage contends that Zebulon lacks standing to assert this claim because Zebulon has not alleged a requisite injury-in-fact but rather asserts hypothetical injuries. As Zebulon complains about the threat of Ordinance enforcement and does not allege that any action has been initiated, Zebulon's claims are fairly read as a pre-enforcement challenge to the Ordinance. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014). In bringing such a challenge, "a plaintiff satisfies the injury-in-fact requirement where [it] alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id*. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Zebulon has alleged an intention to continue with a course of conduct protected by the First Amendment, but which is proscribed by the Ordinance. Sections 20-270 and 20-271 of the Ordinance authorize fines of up to $1000 per day for violations thereof. Zebulon has conducted its adult entertainment business in the same physical plant with the same physical layout for some thirty-five years and the costs of complying with the Ordinance's physical plant requirements would reduce its revenue to the point where its business is not viable. These alleged facts raise a reasonable inference that Zebulon intends to continue its business but for the Ordinance's requirements.

19

Furthermore, in light of the Ordinance's recent enactment, stated purpose, and the allegation that Zebulon is the only business it affects, Zebulon has plausibly alleged a credible threat of prosecution if it violates the Ordinance. That is sufficient to establish standing at this stage. *See, e.g., Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (bookstores had standing to challenge law prohibiting the display of explicit materials accessible to minors as "the law is aimed directly at [them], who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution."); *see also Six Star Holdings*, 821 F.3d at 802. Zebulon's fifth claim may proceed.

### 6. Eighth and Ninth Claims

Zebulon's eighth claim alleges that the Ordinance provisions challenged in its preceding claims also violate the due process and free speech protections provided in the Illinois Constitution. Zebulon's ninth claim alleges that the Ordinance, as challenged in its second claim, violates Zebulon's rights to due process and free speech, and right to be free from unreasonable searches, as provided in the Illinois Constitution.

DuPage contends that these claims fail to the extent they are premised on fatally flawed preceding claims. DuPage argues that dismissing such preceding claims deprives me of

20

supplemental jurisdiction over analogous challenges brought under the Illinois Constitution. Zebulon does not respond to this argument, thereby conceding it. As I have dismissed claims asserted within Zebulon's second and fourth claims, Zebulon's eighth and ninth claims are dismissed to the extent they reassert the same challenges under the Illinois Constitution.

D.

Turning to DuPage's motion to strike, I "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored and "should not be granted unless [] the language in the pleading has 'no possible relation' to the controversy and is clearly prejudicial . . . ." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013) (citing *Simmons v. John F. Kennedy Med. Ctr.*, 727 F.Supp. 440, 442 (N.D. Ill. 1989); 5C Charles Alan Wright et al., Federal Practice and Procedure § 1382).

DuPage seeks to strike paragraphs 9-11 of Zebulon's pleading, which concern the history of adult business regulations, on the ground that they contain statements of law. Likewise, DuPage seeks to strike paragraphs 13-18 because they contain "impertinently phrased" and inaccurate allegations regarding older legal disputes between DuPage and Zebulon. Dkt. No. 17 at 11. DuPage seeks to strike paragraph 20 as scandalous

21

because it alleges statements by Chairman Cronin, who did not vote on the Ordinance. DuPage also moves to strike paragraph 12 as misleading because it contains a description of DuPage's size while the Ordinance is limited to unincorporated areas of DuPage.

However, these allegations are not entirely immaterial. They largely provide context for Zebulon's manifold challenges to the Ordinance. That context lends to the plausibility of Zebulon's allegations. Nor can these allegations be said to cause undue prejudice or confusion of the issues. DuPage's motion to strike is denied.

II.

I next address Zebulon's motion for partial summary judgment on its second and ninth claims. Zebulon argues that Section 20-267 of the Ordinance authorizes unlimited warrantless searches of its business and customers and "facially violate[s]" the First, Fourth, and Fourteenth Amendments and analogous portions of the Illinois Constitution. Dkt. No. 22 at 3. As discussed above, the Amended Ordinance has mooted Zebulon's challenge that Section 20-267 permits searches of private areas of its business. What remains is Zebulon's claim that Section 20-267 empowers DuPage to censor Zebulon and harm its business by harassing its customers.

22

A.

To succeed in its motion, Zebulon, the moving party, must show "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue to this showing is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

B.

Zebulon moved for partial summary judgment shortly before the Ordinance was amended. The Amended Ordinance now provides:

> 20-267: - INSPECTIONS; ACCESS, PURPOSE, FORM, MANNER.
>
> A. During the normal business hours for any adult entertainment facility, the County and any County official or officer charged with the implementation of this article may inspect any area of the premises designated as open to the public on the diagram required pursuant to Section 20-264.A.
>
> B. The purpose for inspections conducted under this section shall be to ensure compliance with the terms of this article and any other relevant county ordinances pertaining to public health and safety.
>
> C. Inspections under this provision shall be conducted in the same fashion as such inspections are conducted pursuant to another County code, and not more frequently than required by such codes.. [sic] Inspections shall be conducted in a manner which is designed to not interfere, where possible, with the operations of the adult entertainment facility, and

23

shall not unreasonably interfere with a customer's lawful activities.

D. Inspections under this article may include: (1) the examination or review of any survey or site plan necessary to ensure compliance with applicable zoning or building codes; (2) an examination, or test of fire suppression or life safety equipment or necessary to ensure compliance with fire codes; or (3) examinations or inspections to ensure compliance with this article or any other law.

E. In the event any party authorized to conduct an inspection pursuant to this provision is denied, refused or prevented from performing a lawful inspection of an adult entertainment facility, that party may use the remedies provided by law to secure entry to the licensed premises as necessary to perform the inspection.

Dkt. No. 38-2 at 16.

Zebulon's motion rests on some additional facts, which DuPage does not dispute. Namely, DuPage, acting through its governing council and other agents, enacted the Ordinance, to which Zebulon, an adult entertainment facility, is subject. Also, Zebulon's physical business has one public entrance, and includes a clerk's counter, a manager's office, two storage rooms, an electronic equipment room, an employee restroom, a public restroom, a retail section, and two adult video arcades.

C.

To succeed in its facial challenge to the Amended Ordinance's inspection provision, Zebulon must establish that it "is unconstitutional in all of its applications." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2451 (2015) (quoting

24

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). In applying this standard, courts consider "only applications of the statute in which it actually authorizes or prohibits conduct." *Id.*

Zebulon can also prevail on a facial attack alleging a First Amendment violation if it can demonstrate that the Amended Ordinance's inspection provision "is so broad that it may inhibit the constitutionally protected speech of third parties," even though it may be validly applied to Zebulon. *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988) (citations and internal quotations omitted). This type of challenge requires a showing that the Amended Ordinance is "substantially overbroad, which requires the court to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* (citations and internal quotations omitted). This "kind of facial challenge is an exception to ordinary standing requirements[.]" *Id.* (citation omitted).

Zebulon argues that the Amended Ordinance's inspection provision "authorizes warrantless searches" of Zebulon's patrons and employees and "broadly threaten[s] the First and Fourth Amendment rights of all within its purview." Dkt. No. 44 at 7. As explained below, Zebulon has not demonstrated that inspection

provision facially violates the Fourth Amendment or the First Amendment.

1.

The Fourth Amendment protects against unreasonable searches and provides that "no Warrants shall issue, but upon probable cause." Under this constitutional text, "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Patel*, 135 S. Ct. at 2452 (citations and internal quotations omitted).

Zebulon complains that the Amended Ordinance authorizes warrantless searches of the employees and customers at its business. Specifically, Zebulon contends that that Section 20-267(D)(3) authorizes searches "to ensure compliance with this article or any other law." According to Zebulon, that section allows inspectors to accost and interrogate patrons to ensure that Zebulon is complying with the Amended Ordinance's prohibitions on minors and alcohol as well as for evidence of gambling or immigration law violations.

In support, Zebulon points to *Patel*, 135 S. Ct. 2443, and *Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 173 (3d Cir. 2016). In *Patel*, the Supreme Court considered a municipal code provision requiring that hotels keep records of

26

guest information and provide police with such records on demand. 135 S. Ct. at 2448. The Court determined that this provision violated the Fourth Amendment because it subjected hoteliers to arrest and punishment for their failure to turn over records without an opportunity for precompliance review, which is required for a constitutional administrative (i.e. warrantless) search. *Id*. at 2453 ("Absent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests.").

In *Free Speech*, the Third Circuit considered a statute that required producers of sexually explicit content to keep records documenting the identity and age of every individual performer and to make those records available for inspection by the Attorney General. 825 F.3d at 154-55. The statute also made the failure to keep or provide such records a criminal offense. *Id*. at 155. The court determined that statute's inspection provision was facially unconstitutional because the administrative search exception to the warrant requirement did not apply, but even if it did, the government failed to show that warrantless inspections were necessary for a regulatory purpose. *Id*. at 171.

The Amended Ordinance is distinguishable from the statutes at issue in *Patel* and *Free Speech*, which required the production

27

of records that business owners had no obligation to keep in a public space under the threat of criminal prosecution. The Amended Ordinance provides for the inspection of areas open to the public during business hours and does not provide penalties for the refusal of an inspection. It is difficult to see where this inspection requirement invades Zebulon's Fourth Amendment rights. The Fourth Amendment protects against searches that infringe on "an expectation of privacy that society is prepared to consider reasonable[.]" *Maryland v. Macon*, 472 U.S. 463, 469 (1985) (citation omitted). No reasonable expectation of privacy exists for "areas of [a] store where the public [is] invited to enter and to transact business." *Id.* (citation omitted). The warrantless inspection of Zebulon's public commercial space does not present the constitutional concerns at issue in *Patel* and *Free Speech. Cf. Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978) ("What is observable by the public is observable, without a warrant, by the Government inspector as well.") (citation omitted).

A question remains as to whether the Amended Ordinance unconstitutionally empowers DuPage to violate the privacy rights of Zebulon's customers and employees.[5] Those individuals do not

---

[5] DuPage argues, without citation to controlling authority, that Zebulon lacks standing to assert the Fourth Amendment rights of its customers. *See* Dkt. No. 29 at 12. I do not agree that this dooms Zebulon's claim, as it is a vendor of protected speech,

have a constitutional right to be shielded from all observation during an inspection of Zebulon's public premises. "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Even the so-called secluded areas of a public adult entertainment establishment do not provide a reasonable expectation of privacy. *See, e.g., Matney v. County of Kenosha*, 86 F.3d 692, 698 (7th Cir. 1996) ("We agree that there is no constitutional privacy right to view sexually explicit movies in a public place in seclusion."); *ABCDE Operating, LLC v. City of Detroit*, 254 F. Supp. 3d 931, 956 (E.D. Mich. 2017). Nor does the Amended Ordinance explicitly authorize or require interactions between inspectors and patrons. It follows that inspections under the Amended Ordinance can be conducted with investigative tools that do not violate the Fourth Amendment. *See, e.g., Kozel v. Duncan*, 421 F. App'x 843, 850 (10th Cir. 2011) (Fourth Amendment was not violated by officers "observing patrons for signs of illegal behavior in the public areas of [a dance hall]—including using a flashlight in the darkened areas in order to visually inspect patrons' identification[.]").

---

which the Amended Ordinance endeavors to restrict. *See Craig v. Boren*, 429 U.S. 190, 195 (1976) ("Accordingly, vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.").

Officers could also carry out an inspection in an unconstitutional manner. *See, e.g., id.* (officers violated the Fourth Amendment when they seized dance hall "patrons for over an hour and lined them up for sobriety checks."). However, the possibility that officers will subject Zebulon's customers to unlawful detentions, when they are not expressly authorized to do so, does not make the Amended Ordinance unconstitutional on its face. *See Washington State Grange*, 552 U.S. at 449-50 ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases.") (citations and internal quotations omitted). Zebulon has not shown that the Amended Ordinance's inspection provision violates the Fourth Amendment in all its applications.

2.

Zebulon also argues that the Amended Ordinance empowers DuPage to harass its customers, which will effectively censor its protected speech by harming its business. Specifically, Zebulon asserts that it "foresees a considerable likelihood" that DuPage will stop-and-frisk Zebulon's patrons under the guise of inspections to enforce prohibitions on alcohol and underage individuals. Dkt. No. 22 at 10. This foresight is based on DuPage's "patent hostility" to Zebulon. *Id.*

30

In support of its argument, Zebulon points to several cases where police were enjoined from intimidating or harassing customers of adult bookstores or theaters because such conduct constituted a restraint on speech. *See D.P.D. Investments v. City of Beaumont*, 82 F. Supp. 2d 619, 626 (E.D. Tex. 2000); *Maguin v. Miller*, 433 F. Supp. 223, 229 (D. Kan. 1977); *P. A. B., Inc. v. Stack*, 440 F. Supp. 937, 945 (S.D. Fla. 1977); *Bee See Books, Inc. v. Leary*, 291 F. Supp. 622, 626–27 (S.D.N.Y. 1968). However, these cases all involve a factual record of police action.

For example, in *P. A. B.*, the court held that a state statute prohibiting possession of an article or instrument of indecent use was facially constitutional. 440 F. Supp. at 944. The court nonetheless enjoined "police activity unreasonable in frequency and without probable cause" to enforce that statute based on a four-month-long pattern of police interrogating adult book store patrons and employees, which "was effectuated in a manner calculated to maximize the negative impact on Plaintiffs' businesses [.]" *Id.* at 945-46.

Zebulon's facial challenge is distinguishable from these cases because neither the record nor the language of the Amended Ordinance's inspection provision show a danger of customer harassment. Zebulon's concerns about such harassment are based on factual assumptions that DuPage and its agents will execute

31

inspections in a manner designed to scare off Zebulon's customers. However, the record Zebulon has assembled for its motion does not provide any facts to support these assumptions.

As previously discussed, nothing in the Amended Ordinance requires that inspections involve customer interaction. The mere presence of police in a public venue does not violate the First Amendment, even if the venue's customers dislike that police presence. *Andree v. Ashland Cty.*, 818 F.2d 1306, 1315–16 (7th Cir. 1987) (police presence at rock concert did not violate First Amendment as there was no evidence of harassment or intimidation). Many courts, including the Seventh Circuit, have concluded the First Amendment does not provide customers of "public adult entertainment establishments" with "a general privacy right . . . to watch sexually explicit movies in seclusion and anonymity." *Matney*, 86 F.3d at 698. Furthermore, Zebulon has not identified any authority finding a provision for the inspection of public spaces facially unconstitutional because police officers could use it as a pretext for unlawful harassment. Accordingly, Zebulon has not shown that the Amended Ordinance's inspection provision will result in customer harassment in all of its applications or that it presents a realistic danger that its application will significantly compromise others' First Amendment protections. "That factual

32

determination must await an as-applied challenge." *Washington State Grange*, 552 U.S. at 457-58.

Zebulon's motion is denied.

III.

For the foregoing reasons, DuPage's motions are granted in part and denied in part. Zebulon's claim that the Ordinance allows searches of private areas of its store is dismissed. Zebulon's claim that Sections 20-265(B) and 20-269 of the Ordinance lack a *scienter* element is dismissed. Zebulon's eighth and ninth claims are dismissed to the extent they reassert these dismissed claims under the Illinois Constitution. Zebulon's motion for summary judgment on its second and ninth claims is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: April 16, 2020