IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Zebulon Enterprises, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19-cv-5165 |
| | ) |
| DuPage County, Illinois, | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion and Order

In this action, Plaintiff Zebulon Enterprises, Inc. ("Zebulon"), an adult entertainment facility, sues DuPage County, Illinois ("DuPage") to challenge DuPage's recently enacted adult entertainment ordinance, AHAB-O-0031-19 ("the Ordinance"), and its subsequent amendment AHAB-O-0031A-19 ("the Amended Ordinance"), as violative of Zebulon's rights under the First, Fifth, and Fourteenth Amendments, as well as under various provisions of the Illinois Constitution. DuPage has filed a motion to dismiss the fourth, tenth, and eleventh claims of Zebulon's Third Amended Complaint [65]. For the reasons that follow, DuPage's motion to dismiss is granted.

I.

I turn first to Zebulon's fourth cause of action. There, Zebulon alleges that the Ordinance violates Zebulon's free speech and due process rights by imposing strict-liability age and alcohol restrictions that, if violated, could result in revocation or denial of Zebulon's adult business license. Zebulon contends that where First Amendment rights are implicated, scienter must be a predicate (or at least a defense) to invocation of a statute's penalty to avoid a chilling effect on protected speech. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994).

There are four provisions of the Ordinance at issue in the Third Amended Complaint[1]: Section 20-256(A)(1), which provides that a business license may be revoked where "[t]he owner or operator employed a person under the age of eighteen (18) in any capacity at an adult entertainment facility"; Section 20-263(D), which made it unlawful for any person under the age of eighteen to be on the premises of an adult entertainment facility; Section 20-265(A), which prohibits adult entertainment facilities from employing or providing services to any person who is not at least eighteen; and Section 20-269, which in its first sentence prohibits "any person" from consuming or possessing open alcoholic beverages

---

[1] I previously dismissed Zebulon's fourth claim as it pertained to Section 20-265(B) and the second sentence of Section 20-269. *Zebulon Enters., Inc. v. DuPage County*, 438 F. Supp. 3d 881, 891 (N.D. Ill. 2020).

2

on the premises of an adult entertainment facility. *See* R. 59-2, R. 59-3. The parties agree that Zebulon's claim pertaining to Section 20-263(D) is now moot because the Amended Ordinance removed that section from the code. *Id.; see Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) ("[R]epeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the [governmental entity] plans to or already has reenacted the challenged law or one substantially similar."). Accordingly, Zebulon's fourth claim as to Section 20-263(D) is dismissed as moot.

I turn next to Section 20-269. As amended, that section provides in relevant part:

> It shall be unlawful for any person to consume or be in possession of any open alcoholic beverages while on the premises of any adult entertainment facility. It shall be unlawful for any adult business employee to consume or possess an alcoholic beverage on the premises of any adult entertainment facility, or for any adult business employee to knowingly permit another party to consume or possess an alcoholic beverage on the premises of any adult entertainment facility under their ownership, management, or control.

R. 59-3 at 34. Zebulon argues that the section's first sentence, which prohibits "any person" from consuming or possessing an open

3

alcoholic beverage on the premises, could result in denial or revocation of Zebulon's business license without any requirement of scienter on Zebulon's part. Zebulon points to various sections of the ordinance, including Sections 20-255(F),[2] 20-260(B)(7), and 20-261(A)(4), (B)(1,2), which provide for denial or revocation of an adult business license after a certain number of violations of the ordinance. R. 70 at 4. Each of these provisions, however, requires violations on the part of the license applicant or employee.[3] Accordingly, implicit in Zebulon's interpretation is that a violation of the first sentence of the provision would be imputed to Zebulon and/or its employees.

DuPage argues that Zebulon's interpretation is not supported by the plain terms of the statute. If a violation in the form of "any person" possessing or consuming alcohol on the premises could be imputed to Zebulon on a strict-liability basis, it contends, it would render superfluous the second sentence, which provides that adult business employees may not "knowingly permit another party

---

[2] Zebulon cites Section 20-255(G), but that provision became Section 20-255(F) when the ordinance was amended. R. 59-3 at 6.

[3] Section 20-255(F) provides that a business's license will not be renewed "if *the applicant, his agent, representative or managers* have been convicted of three (3) or more violations of this article in the past two calendar years." R. 59-3 at 24 (emphasis added). Similarly, under Section 20-260(B)(7), an employee's license will not be renewed if "*the applicant*" has had three or more violations in the past two years. *Id.* at 28. Section 20-261 provides that an employee's license can be revoked or automatically suspended if the "*employee*" commits a certain number of violations of the ordinance in a given period. *Id.*

4

to consume or possess an alcoholic beverage on the premises." R. 71 at 7. DuPage argues, therefore, that the first sentence applies to the possessor or consumer of alcohol, while only the second sentence governs the behavior of the licensee.

While DuPage presents a more plausible reading of the ordinance according to its plain terms, DuPage is not correct that Zebulon's reading would render the second sentence superfluous such that it would run afoul of a canon of statutory interpretation. *See, e.g.*, *In re I80 Equip., LLC*, 938 F.3d 866, 870 (7th Cir. 2019). The first sentence prohibits "any person" from consuming or possessing only "open" alcoholic beverages, while the second sentence prohibits employees from knowingly permitting consumption or possession of any alcohol, with no requirement that it be "open." Accordingly, it is not inconceivable that the ordinance's drafters intended to impose strict liability upon the licensee with regards to "open" beverages, which may be easier for a business to detect, but to include a scienter requirement with regard to closed beverages.[4]

---

[4] Of course, this interpretation would create a redundancy with regard to "consumption" of alcohol because, presumably, alcohol must be open to be consumed, "but redundancy is common in statutes, and probably more so in village ordinances; a village may not have the resources for assuring highly professional legal draftsmanship." *Markadonatos v. Village of Woodridge*, 760 F.3d 545, 548 (7th Cir. 2014) (Posner, J., concurring)

5

In the face of two reasonable interpretations of an ordinance, however, I am bound to adopt the one that does not raise serious constitutional issues. *See, e.g.*, *Markadonatos v. Village of Woodridge*, 760 F.3d 545, 548–49 (7th Cir. 2014) (Posner, J., concurring). Accordingly, because Zebulon's interpretation raises First Amendment and due process questions, I adopt DuPage's interpretation and conclude that violations of the first sentence of Section 20-269 are not attributable to the licensee. As a result, because the first sentence cannot result in strict-liability revocation or denial of Zebulon's license, Zebulon's fourth claim pertaining to Section 20-269 is dismissed.

The final two sections, Sections 20-256(A)(1) and 20-265(A), are strict-liability restrictions that prevent the licensee from hiring or servicing any person under the age of eighteen. Zebulon contends that those sections must require knowledge on the part of the licensee that the person is underage; otherwise, they will have the effect of chilling expression protected by the First Amendment.[5] In support, Zebulon cites *X-Citement Video*, 513 U.S.

---

[5] Although not spelled out in the papers, Zebulon's argument is presumably that the ordinance will cause licensees, in the name of caution, to deny access to protected speech within their establishments to youthful-looking adults. *Cf. Smith v. California*, 361 U.S. 147, 153 (1959) (holding unconstitutional a strict-liability ordinance preventing booksellers from possessing obscene books because it would cause each bookseller to "tend to restrict the books he sells to those he has inspected [and as a result] the public's access to reading matter would be restricted").

at 73, and *United States v. U.S. Dist. Court*, 858 F.2d 534, 543 (9th Cir. 1988).

Zebulon's cases, however, do not support its contention that a scienter component is constitutionally required here. In *X-Citement Video*, the Court interpreted a criminal statute prohibiting distribution of child pornography to include a scienter requirement, in part because a strict-liability interpretation would raise questions regarding the statute's constitutionality. 513 U.S. at 78. But the Court distinguished certain strict-liability offenses, including production of child pornography and statutory rape, because there, "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *Id.* at 72 n.2. Here, too, the adult entertainment licensee has face-to-face contact with its employees and customers and can reasonably be required to determine their ages.

In *U.S. District Court*, the other case cited by Zebulon, the Ninth Circuit read a mistake-of-age defense into a statute prohibiting production of child pornography, citing First Amendment concerns. 858 F.2d at 543. But the Seventh Circuit specifically disagreed with that holding in *United States v. Fletcher*, 634 F.3d 395, 402-03 (7th Cir. 2011). There, the Seventh Circuit considered the identical question—"whether [the strict-liability statute prohibiting production of child pornography]

7

risk[ed] chilling such a substantial amount of protected conduct that the absence of a mistake-of-age defense outweigh[ed] the government's indisputably compelling interest in protecting children from the documented ills of child pornography." *Id.* at 402. The Court "reject[ed] [the] contention that the Constitution necessarily requires a scienter element as to the age" of an underage individual. *Id.* at 403. Considering the pornography producer's ability to interact with performers and ascertain their ages, and reasoning that the First-Amendment overbreadth implicated was not "substantial," the court held that the strict-liability offense of production of child pornography withstood constitutional scrutiny. *Id.* at 403-04.

In light of the Seventh Circuit's conclusions in *Fletcher*, I must reject Zebulon's contention that the First Amendment requires that Sections 20-256(A)(1) and 20-265(A) contain a scienter element. DuPage has a "compelling interest in protecting minors from exposure to sexually explicit materials." *See Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 675 (2004) (Stevens, J., concurring); *see also Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1000 (7th Cir. 2002) (discussing government interest in "preventing underage employees from working for [sexually oriented] businesses"). As noted above, the licensee has contact with both its employees and customers, and it can reasonably be required to verify their ages. Moreover, "the economic incentive for

8

[licensees to admit youthful-looking individuals] serves to reduce any [limited expression-]chilling effect the statute may have." *Fletcher*, 634 F.3d at 404. Accordingly, Zebulon's fourth claim pertaining to Sections 20-256(A)(1) and 20-265(A) is dismissed.

## II.

I turn next to Zebulon's tenth claim for relief, in which Zebulon alleges that DuPage's enactment of the Ordinance and Amended Ordinance was ultra vires. DuPage is a non-home rule county, which means that with certain limited exceptions it has "only powers granted to [it] by law," in contrast to home rule counties, which have additional self-regulatory discretion. Ill. Const. art. VII, §§ 6-7. Zebulon alleges that DuPage County was not empowered to enact the Ordinance and the Amended Ordinance, which were both passed in 2019, until January 1, 2020, the effective date of Illinois Public Act 101-405. That act amended 55 Ill. Comp. Stat. 5/5-1097.7, which governs "[l]ocal ordinances to regulate adult entertainment facilities," largely to include a new subsection (c), which provides, in relevant part:

> (c) Specified counties. A non-home rule county with a population of at least 900,000 may adopt, by ordinance, reasonable regulations concerning the operation of a business in unincorporated areas of the county: (i) defined as an adult entertainment facility in Section 5-1097.5 of this Act; (ii) that involves exposure of

9

> specified anatomical areas or performance of specified sexual activities by a person within the business' premises; or (iii) that offers or provides sexually-oriented entertainment services or activities. . . .
>
> If the county has established a licensing program as part of its regulation of adult entertainment facilities under this subsection, the findings, decision, and orders of the licensing official or licensing body is subject to review in the Circuit Court of the county. The Administrative Review Law and the rules adopted under the Administrative Review Law apply to and govern the judicial review of the final findings, decision, and order of the licensing official or licensing body under this subsection.

55 Ill. Comp. Stat. 5/5-1097.7(c). DuPage County is currently the only non-home rule county in Illinois with a population of at least 900,000.

DuPage argues that the Ordinance and Amended Ordinance were not ultra vires because DuPage had authority to adopt the ordinances under section (b) of the 2019 version of 55 Ill. Comp. Stat. 5/5-1097.7. That section provided:

> A county may adopt by ordinance reasonable regulations concerning the operation of any business: (i) defined as an adult entertainment facility in Section 5-1097.5 of

10

> this Act or (ii) that offers or provides activities by employees, agents, or contractors of the business that involve exposure of specified anatomical areas or performance of specified sexual activities in view of any patron, client, or customer of the business. . . .

55 Ill. Comp. Stat. 5/5-1097.7(b) (2019).

Zebulon, which sells sexually oriented products and administers two video arcade booths where individuals can view sexually oriented films, does not contend that it is not an adult entertainment facility under subpart (i). It argues, however, that before the 2020 addition of section (c), which explicitly subjects decisions of any licensing body to judicial review, DuPage had no authority to enact a constitutionally valid licensing scheme. R. 70 at 11–12.

It is true that in the context of an adult business licensing scheme, the First Amendment requires that the applicant be able to obtain prompt judicial review of adverse licensing decisions. *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 780–81 (2004). However, where the ordinance "does not seek to *censor* material [but] applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display," ordinary state judicial review procedures suffice. *Id.* at 781–783 (emphasis in original). That is the case here. The grounds for denial or revocation of

11

adult business licenses are particularly enumerated in the Amended Ordinance, and they involve objective, content-neutral criteria; a business license may be denied, for example, if the applicant has not satisfied application requirements, if the owner or operator has committed certain crimes, if the applicant is under eighteen, if the applicant has made false or misleading statements in the application, or if the applicant has violated the ordinance three or more times in the past two years. R. 59-3 at 23–24; *see City of Littleton*, 541 U.S. at 783 (holding similar licensing scheme was not content based). Accordingly, ordinary state judicial procedures are sufficient.

Although the 2019 version of 55 Ill. Comp. Stat. 5/5-1097.7 was silent as to judicial review, that does not mean that none was available. Illinois law allows for judicial review of licensing and other administrative decisions through the mechanism of a common-law writ of certiorari. *See, e.g.*, *Russell v. Dep't of Nat. Res.*, 701 N.E.2d 1056, 1059 (Ill. 1998); *see also Graff v. City of Chicago*, 9 F.3d 1309, 1325 (7th Cir. 1993). The Seventh Circuit has held that where the underlying ordinance is silent as to judicial review, the writ of certiorari can provide a sufficient safeguard under the First Amendment. *Graff*, 9 F.3d at 1325; *see Thomas v. Chi. Park Dist.*, 227 F.3d 921, 926 (7th Cir. 2000) ("[A] majority [of the *Graff* court] believed that the [certiorari] judicial review procedure was good enough for a regulation of

12

expressive activity when the regulation is not a form of censorship . . . ."). I conclude, therefore, that even before the amendment effective in 2020, 55 Ill. Comp. Stat. 5/5-1097.7 enabled DuPage to enact a constitutionally valid licensing scheme.[6]

For the foregoing reasons, I conclude that Zebulon has failed to state a claim that enactment of the Ordinance or Amended Ordinance was ultra vires, and I dismiss Count 10 of the Third Amended Complaint.

### III.

Finally, DuPage has challenged Zebulon's eleventh claim for relief. In that cause of action, Zebulon alleges that 55 Ill. Comp. Stat. 5/5-1097.7, as amended effective in 2020, violates the "special legislation" clause of the Illinois Constitution, Ill. Const. Art. IV, § 13, as well as the Due Process and Equal Protection Clauses of the Federal Constitution, because of its differential treatment of DuPage County, the only "non-home rule

---

[6] It is worth noting that the Ordinance itself contains a judicial review provision. *See* R. 59-3 § 20-272. Without an enabling statute, however, DuPage lacks the authority to determine the jurisdiction of or procedure applicable to Illinois courts. Ill. Const. Art. VII, § 7; *see Graff*, 9 F.3d at 1324–25 (providing that even home-rule units lack the unilateral authority to make judicial review of administrative decisions available). DuPage claims that there is an enabling statute, but it does not cite it. R. 71 at 11 n.7. Regardless of whether the Ordinance's judicial review provision is authorized under Illinois law, however, the common-law writ of certiorari provides a sufficient judicial-review procedure here.

county with a population of at least 900,000" in Illinois. Because Zebulon lacks standing to assert this claim, it is dismissed.

In order to have standing to assert a claim, a litigant must "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction has the burden of establishing standing. *Lujan*, 504 U.S. at 561. Accordingly, Zebulon "must 'allege . . . facts essential to show jurisdiction. If [it] fai[ls] to make the necessary allegations, [it has] no standing.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

Zebulon contends that its "concrete and particularized injury is that the County could not pass its burdensome licensing law in the absence of authority to enact such regulations" under the 2020 amendment of the enabling act. R. 70 at 13. But as discussed in the previous section, DuPage was empowered to enact the ordinances under the pre-amendment version of the statute. Accordingly, Zebulon has not met its burden to establish standing, and Zebulon's eleventh claim for relief is dismissed.

IV.

For the foregoing reasons, DuPage's motion to dismiss [65] is granted.  Zebulon's fourth, tenth, and eleventh claims for relief under the Third Amended Complaint are dismissed.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 25, 2020